IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CRYSTAL BOND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 20-CV-00594-GKF-SH |
| | ) |
| JOHN E. WHITLEY, | ) |
| *Acting Secretary of the Army*, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter comes before the court on the Motion to Dismiss [Doc. 11] of defendant John E. Whitley, Acting Secretary of the Army.[1] For the reasons set forth below, the motion is granted in part and denied in part.

**I.      Allegations of the Amended Complaint**

The Amended Complaint, the operative pleading, includes the following allegations:

Plaintiff Crystal Bond was hired by the Department of the Army—specifically, the Army Corps of Engineers—on January 18, 2010 in the position of cartographer, GS-1370-11. [Doc. 5, pp. 2-3, ¶¶ 4, 8]. Thereafter, Ms. Bond worked for the Army as a full-time employee in Tulsa, Oklahoma. [*Id.* at p. 3, ¶¶ 9-10]. Ms. Bond's annual performance evaluations all reflected that Ms. Bond met or exceeded the standards of her professional position, and she received periodic regular annual increases on work in 2011, 2012, 2013, 2014, 2015, 2016, 2017, and 2018. [*Id.* ¶ 11].

---

[1] John E. Whitley became Acting Secretary of the Army on January 20, 2021. Pursuant to Fed. R. Civ. P. 25(d), Acting Secretary Whitley is automatically substituted for former U.S. Secretary of the Army Ryan D. McCarthy.

In 2017, Ms. Bond took a volunteer assignment to Puerto Rico in the aftermath of Hurricane Maria. [*Id.* ¶¶ 9, 12]. Ms. Bond reported to work in Puerto Rico on December 16, 2017 and was required to work thirty-one consecutive days. Ms. Bond requested, and was granted, two days of sick leave. [*Id.* at p. 4, ¶ 14].

On December 25, 2017, while on duty in Puerto Rico, Ms. Bond suddenly suffered a major panic attack while in the San Juan Airport. With the aid of another Army Corps of Engineers employee, Ms. Bond was able to stabilize and continued on to her work station at Ceiba Area Office, Fajardo, Puerto Rico. [*Id.* at p. 3, ¶ 12]. Ms. Bond alleges that several other traumatic incidents occurred after this, until she finally curtailed her deployment on January 30, 2018. [*Id.*]. Ms. Bond returned to Tulsa, Oklahoma on February 2, 2018 and took one week of annual leave. [*Id.* at p. 4, ¶ 15].

Ms. Bond returned to her employment with the Army on February 14, 2018, but still did not feel well and sought medical assistance on February 16, 2018. [*Id.* ¶ 16]. Ms. Bond's physician made a diagnosis of post-traumatic stress disorder (PTSD)/anxiety and depression and ordered Ms. Bond to "immediately curtail all employment duties and to not commute in heavy traffic." [*Id.*].

Ms. Bond subsequently sought a workplace accommodation from her supervisor, Dan Hernandez. Ms. Bond provided medical documentation to Mr. Hernandez. However, Mr. Hernandez denied Ms. Bond's request for accommodation and "did not enter into any interactive process with [Ms. Bond] to learn details of [her] condition and to fashion a workplace accommodation for [her]." [*Id.* ¶ 17]. Ms. Bond then applied for family medical leave, which the Army limited to a period of four weeks. [*Id.* ¶ 18].

On March 2, 2018, Ms. Bond provided the Army a written medical report from Lisa Cragar, MS, LPC, and John Fell, D.O., that documented Ms. Bond's disability and medical condition, as

well as that Ms. Bond suffered from PTSD and anxiety. [*Id.*]. However, Ms. Bond alleges that the Army again "failed and refused to engage in any interactive process," and, instead, forced her to take an additional four weeks of family medical leave. [*Id.* at p. 5, ¶ 19].

At the conclusion of the second four-week family medical leave, Ms. Bond alleges the Army again refused to engage in any interactive process with her in regard to work place accommodations. Instead, the Army allegedly forced Ms. Bond to take a third four-week period of family medical leave. [*Id.* ¶ 20].

In May of 2018, at the conclusion of the twelve-weeks of family medical leave allowed by law, Ms. Bond requested to be allowed to telework from her home. Ms. Bond asserts that she had teleworked in the past with good results prior to her deployment to Puerto Rico, and had, at her own expense, fully set up her home with high speed, fiber-optic internet, office space, necessary equipment, and her Army Corps of Engineers laptop. Ms. Bond alleges that other employees in the Army's Tulsa, Oklahoma office were already allowed to telework. [*Id.* ¶ 21]. The Army refused Ms. Bond's request to telework, claiming "the GIS Department is new, so no GIS employees can telework." [*Id.* ¶¶ 22-23]. However, the Army did not claim any specific undue hardship posed by Ms. Bond's request for workplace accommodation. Nor did the Army offer any explanation as to why Ms. Bond was allowed to telework before she was disabled but not permitted to telework after she was disabled. [*Id.* at pp. 5-6, ¶ 23].

Ms. Bond alleges that she made two more subsequent requests to be allowed to telework, but the Army denied all subsequent requests. The Army did not attempt to engage in any interactive process to explore reasonable accommodations. Its refusal to do so allegedly harmed Ms. Bond and interfered with the Tulsa District GIS mission. [*Id.* at p. 6, ¶ 24].

On June 13, 2018, Ms. Bond received an email from Catherine Rhodes, HR specialist, advising Ms. Bond to apply for disability retirement. The next day, June 14, 2018, Ms. Bond forwarded Ms. Rhodes's email to Mr. Hernandez and informed him of her intent to apply for disability retirement. [*Id.* ¶ 25]. Nevertheless, on June 15, 2018, the Army sent Ms. Bond a letter, via certified mail, return receipt requested, ordering Ms. Bond to immediately return to work or be reported AWOL under Army Regulation 630-10. However, Ms. Bond had not yet been released by her physician to drive or return to work. At the time, Ms. Bond had open disability and workers compensation claims. [*Id.* at pp. 6-7, ¶¶ 26-28].

Thereafter, the Army sent out a series of emails, memoranda, and letters by certified mail, return receipt requested to Ms. Bond, all of which demanded that she immediately return to work or be reported as AWOL and be subject to disciplinary action to include discharge. Again, Ms. Bond alleges the Army did not offer to engage in any interactive process with Ms. Bond to explore workplace accommodations, nor did the Army make any specific claim of undue hardship posed by her request for accommodation. [*Id.* at p. 7, ¶ 29].

Without any specific notice, on January 31, 2019, the Army issued to Ms. Bond a Notice of Proposed Removal signed by Ashley Allinder, PE, PMP, Deputy Chief, Engineering and Construction Division. [*Id.* ¶ 30]. On March 12, 2019, the Army issued to Ms. Bond a Notice of Removal signed by Richard T. Childers, PE, LTC, EN, Deputy Commander. [*Id.* at p. 8, ¶ 31].

Immediately following the Army's removal of Ms. Bond's employment, Ms. Bond alleges that the Army failed and refused to process the normal and necessary exit documents and to provide those exit documents to the U.S. Office of Personnel Management (OMP) to allow OMP to reinstate Ms. Bond's Blue Cross Blue Shield medical insurance. [*Id.* ¶ 32]. Ms. Bond made several inquiries with, and requests of, the Army's Human Resource Representative Duane Braxton in an

effort to get her medical insurance reinstated, but the Army again failed to provide normal exit documents to OPM to allow OPM to reinstate the insurance. [*Id.* ¶ 33].

Ms. Bond asserts that the Army's "unlawful interference with [Ms. Bond's] protected rights" exacerbated her medical conditions in that it was essential for her to obtain immediate psychiatric treatment or she would suffer permanent affects from PTSD, and the Army had been informed of same. Ms. Bond states that the cancellation of her medical insurance prevented her from obtaining the immediate medical care needed to prevent long term deleterious effects. [*Id.* ¶ 35]. Ms. Bond states that from March 2019 to December 2019, she was deprived of her "retirement benefit of medical insurance from Blue Cross Blue Shield free of any additional premium payment, charge, or fee." [*Id*. at p. 9, ¶ 36]. During that nine-month period, Ms. Bond alleges she was forced to live without medical insurance coverage. The medical insurance coverage was belatedly reinstated, but Ms. Bond had to pay a premium in excess of $3,000.00 to cover the time when her medical insurance was not in effect. [*Id.*].

Based on these factual allegations, the Amended Complaint includes five causes of action: (1) violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*; (2) prohibited personnel practices in violation of 5 U.S.C. § 2302; (3) violation of Rehabilitation Act, 29 U.S.C. § 791 *et seq.;* (4) unlawful discrimination based on sex or gender, 42 U.S.C. § 2000e-2(a) (Title VII); and (5) interference with protected rights in violation of 29 U.S.C. § 1140. [Doc. 5]. The Army now moves to dismiss the Amended Complaint in its entirety. [Doc. 11]. Ms. Bond filed a response in opposition [Doc. 12], and the Army filed a reply. [Doc. 13]. Thus, the motion is ripe for the court's determination.

## II. Standard

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief can be granted. A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility requirement "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the conduct necessary to make out the claim. *Id.* at 556. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court "must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (quoting *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007)).

## III. Analysis

The Army seeks to dismiss Ms. Bond's second, third, and fourth causes of action—that is her claims under 5 U.S.C. § 2302, the Rehabilitation Act, and Title VII—based on failure to exhaust administrative remedies. As to the § 2302 claim, the Army also argues that Ms. Bond did not timely appeal her removal or the August 18, 2020 decision. [Doc. 11, p. 13]. Finally, the Army argues that Ms. Bond fails to state a plausible claim under the ADA or 29 U.S.C. § 1140 because the statutes do not apply in this context.[2] For ease of analysis, the court first considers the

---

[2] The court notes that Ms. Bond's response in opposition to the motion to dismiss fails to address these arguments with respect to the ADA and 29 U.S.C. § 1140. Regardless of her failure to respond, the court addresses the merits of the arguments in subsections A and B below.

applicability of the ADA and 29 U.S.C. § 1140 to Ms. Bond's claims, then exhaustion of the Rehabilitation Act and Title VII claims, and, finally, the § 2302 claim.

  A. *ADA Claim (First Cause of Action)*

Pursuant to the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "Covered entity" means "an employer, employment agency, labor organization, or joint labor-management committee." *Id.* § 12111(2). The ADA's definition of "employer" specifically excludes the United States government. *Id.* § 12111(5)(B)(i). Thus, "federal employees are expressly excluded from coverage under the ADA." *Padilla v. Mnuchin*, 836 F. App'x 674, 676 n.1 (10th Cir. 2020).

The Department of the Defense, including the Department of the Army, is a department of the United States. 10 U.S.C. § 111. Thus, the Department of the Army is not an "employer" for purposes of the ADA, and Ms. Bond fails to state a plausible ADA claim. *See Kruise v. Fanning*, 214 F. Supp. 3d 520, 527 (E.D. Va. 2016); *Mohr v. Esper*, No. 18-CV-01628-HNJ, 2019 WL 8014316, at *4 n.3 (N.D. Ala. Aug. 19, 2019); *Morea v. Fanning*, No. 15-CV-2720-PAE, 2017 WL 3393843, at *6 (S.D.N.Y. Aug. 4, 2017). The Army's motion to dismiss the ADA claim is granted.

  B. *Claim Under 29 U.S.C. § 1140 (Fifth Cause of Action)*

Pursuant to § 1140,

> [i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

29 U.S.C. § 1140. Section 1140 is part of the Employee Retirement Income Security Act of 1974 (ERISA), and is commonly referred to as ERISA § 510. To state a prima facie case under the section, Ms. Bond must allege "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the [Employees] may become entitled." *Apsley v. Boeing Co.,* 691 F.3d 1184, 1207 (10th Cir. 2012) (quoting *Gavalik v. Cont'l Can. Co.*, 812 F.2d 834, 860 (3d Cir. 1987)). Thus, it is fundamental that Ms. Bond must plead entitlement to benefits under an employee benefit plan to which ERISA applies. *See* 29 U.S.C. § 1003(a).

ERISA explicitly exempts from its coverage "governmental plans." 29 U.S.C. § 1003(b)(1). "'Governmental plan' means a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 29 U.S.C. § 1002(32); *see also Hisler v. Gallaudet Univ.*, 344 F. Supp. 2d 29, 41 (D.D.C. 2004) (internal citations and quotations omitted) ("Congress enacted ERISA, intending to provide uniform federal regulation of employee retirement benefit plans and to make regulation of benefits an entirely federal concern. Although ERISA's preemption power is broad in creating this uniformity, it stops short when affronted with a 'governmental plan.'"). Rather, governmental plans fall within the Federal Employee Health Benefits Act, 5 U.S.C. §§ 8901 *et seq.* (FEHBA). FEHBA authorizes the Office of Personnel Management (OPM) to contract with qualifying carriers, including for health benefits plans, for federal employees. 5 U.S.C. § 8902(e); 5 U.S.C. § 8903; 5 U.S.C. § 8913.

The Amended Complaint includes no explicit allegations that Ms. Bond received benefits from a group health benefit plan covered by ERISA. *See generally* [Doc. 5]. Nor does the Amended Complaint include any allegations from which the court may reasonably infer that Ms.

Bond was entitled to benefits under a plan to which ERISA applies. Thus, Ms. Bond fails to state a plausible claim under ERISA § 510.

Instead Ms. Bond alleges that she was a federal employee and that the Army, a department of the federal government, failed to provide the normal and necessary exit documents to the OPM to permit the OPM to reinstate her Blue Cross Blue Shield medical insurance. [Doc. 5, p. 8, ¶¶ 32-33, 50]. Based on these allegations, the court can reasonably infer only that *the OPM* established or maintained a plan for employees of the Army, and the plan constitutes a "governmental plan." As such, FEHBA, not ERISA, applies. Ms. Bond's claim pursuant to ERISA § 510 (29 U.S.C. § 1140) must be dismissed for this additional reason. *See Fed. Plaza Med. Assocs., P.C. v. Palermino*, No. 87-CIV-6777-MGC, 1991 WL 29201, at *7 (S.D.N.Y. 1991); *see also Kirby v. Fitzgerald Pub. Schs. Dist.*, No. 16-13868, 2017 WL 3616492, at *3 (E.D. Mich. Aug. 23, 2017).

    C.    *Rehabilitation Act and Title VII (Third & Fourth Causes of Action)*

"Federal employees alleging discrimination or retaliation prohibited by Title VII or the Rehabilitation Act must comply with specific administrative complaint procedures in order to exhaust their administrative remedies." *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020) (quoting *Showalter v. Weinstein*, 233 F. App'x 803, 804 (10th Cir. 2007)). "Among other requirements, '[b]efore a federal civil servant can sue h[er] employer for [discrimination or retaliation], [s]he must . . . 'initiate contact' with an Equal Employment Opportunity counselor at h[er] agency 'within 45 days of the date of the matter alleged to be discriminatory.'" *Id*. (quoting *Green v. Brennan*, — U.S. —, 136 S. Ct. 1769, 1774 (2016)); *see also* 29 C.F.R. § 1614.105(a)(1) ("An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the

effective date of the action."). This administrative exhaustion is not jurisdictional, but is an affirmative defense that may be raised by the employer. *Hickey,* 969 F.3d at 1118.

The Army seeks dismissal of Ms. Bond's claims under Title VII and the Rehabilitation Act because Ms. Bond did not initiate contact with an EEO counselor within 45 days of the alleged discriminatory conduct.

A Tenth Circuit panel in a 2019 unpublished decision stated, "[a]lthough failure to exhaust is . . . an affirmative defense, it may be raised in a motion to dismiss when the grounds for the defense appear on the face of the complaint." *Cirocco v. McMahon,* 768 F. App'x 854, 858 (10th Cir. 2019) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)); *see also Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018) ("To be sure, on occasion it is proper to dismiss a claim on the pleadings based on an affirmative defense. But that is only when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements.").

Here, the Amended Complaint alleges, "[p]reviously [Ms. Bond] contacted the EEOC for assistance. Ultimately [Ms. Bond] filed claims of wrongful discharge and violation of the Americans With Disabilities Act with the US Equal Employment Opportunity Commission." [Doc. 5, p. 2, ¶ 5]. The Amended Complaint further alleges that the EEOC issued a decision on Ms. Bond's appeal and notified Ms. Bond of her right to file a civil action. [*Id.* ¶ 6]. Ms. Bond states that, "[w]ith the issuance of that OFO Decision [Ms. Bond] exhausted her administrative remedies with the EEOC and so files this legal action." [*Id.* ¶ 7].

Taking as trues Ms. Bond's allegations that she both (1) contacted the EEOC for assistance and (2) exhausted her administrative remedies with the EEOC, it is not apparent from the face of the Amended Complaint that Ms. Bond failed to exhaust her administrative remedies. Although Ms. Bond does not allege that she contacted an EEOC within 45 days of the relevant conduct, she

does allege that she contacted the EEOC for assistance [Doc. 5, p. 2, ¶ 5] and "[p]laintiffs have no obligation to plead against affirmative defenses." *Cirocco,* 768 F. App'x at 858 n.3 (citing *Jones,* 549 U.S. 199).[3] Because failure to exhaust does not appear on the face of the Amended Complaint, the Army's request for dismissal is premature.

In support of the failure to exhaust affirmative defense, the Army directs the court to the decision of the EEOC Office of Federal Operations, dated August 18, 2020, as to Ms. Bond's appeal (Appeal No. 2020003416). "[W]hen a defendant's motion to dismiss raises an affirmative defense that is not apparent on the face of the pleadings and outside matter is presented and accepted, federal courts will generally treat the motion as if it were one for summary judgment." *Cirocco,* 768 F. App'x at 858 (quoting *Weise v. Casper*, 507 F.3d 1260, 1267 (10th Cir. 2007)). To do so, the court utilizes the procedure set forth in Federal Rule of Civil Procedure 12(d), which states, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). "When presented with a Rule 12(b)(6) motion, the district court has broad discretion in determining whether to accept materials beyond the pleadings." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.,* 861 F.3d 1081, 1103 (10th Cir. 2017) (quoting *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998)).

Consideration of extraneous material does not require the court to convert a Rule 12(b)(6) motion to dismiss to a Rule 56 motion for summary judgment in every circumstance. A district

---

[3] To the extent the Army relies on statements made by Ms. Bond in her response in opposition to the motion to dismiss, "courts must consider the complaint—not the response brief—when considering the merits of a motion brought under Rule 12(b)(6) or Rule 12(c)." *Doe v. Albuquerque Pub. Schs.,* No. 18-CV-00085-WP-KK, 2018 WL 2422013, at *4 (D.N.M. May 29, 2018).

court may consider "documents attached to or referenced in the complaint if they 'are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" *Brokers Choice of Am., Inc.,* 861 F.3d at 1103 (quoting *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 941 (10th Cir. 2002)). The Army contends that the document qualifies as one referenced in the Amended Complaint that is "central to [Ms. Bond's] claim" and to which there is no dispute as to its authenticity. *See id.*; *see also* [Doc. 5, p. 2, ¶ 6 (referencing the August 18, 2020 EEOC Decision); Doc. 11, pp. 5, 7].

Although Ms. Bond refers to the August 18, 2020 EEOC decision in her Amended Complaint, in response to the motion to dismiss, she argues "that Decision contains fundamental, demonstrable errors of fact." [Doc. 12, p. 3]. Further, Ms. Bond attaches six additional documents which she asserts demonstrate that she "did timely exhaust administrative remedies for her claims." [*Id.* at p. 5]. These documents include email correspondence between Ms. Bond and Duane Braxton, Civilian Human Resources Agency, and an EEO Counselor's Report. Resolution of the accuracy of the August 18, 2020 EEOC decision would require the court to consider multiple documents outside of the pleadings, none of which are referenced in Ms. Bond's Amended Complaint. This is an issue best resolved through summary judgment proceedings, not at the motion to dismiss stage. *See Snyder v. Unit Corp.*, No. CIV-19-1023-R, 2020 WL 2089824, at *2 (W.D. Okla. Apr. 30, 2020). Accordingly, the court declines to consider materials outside of the pleadings to determine the Army's motion to dismiss.

As previously stated, Ms. Bond's alleged failure to exhaust administrative remedies does not appear on the face of her Amended Complaint and therefore the Army's motion to dismiss on this basis must be denied.

D.     *Prohibited Personnel Practices, 5 U.S.C. § 2302 (Second Cause of Action)*

As previously stated, the Army argues that Ms. Bond failed to exhaust her administrative remedies with respect to the § 2302 claim and timely appeal the Army's decision within the requisite timeframe. [Doc. 11, pp. 12-13].

Section 2302 defines "prohibited personnel practice" for purposes of the Civil Service Reform Act (CSRA). "The CSRA provides a comprehensive claims procedure for most government employees, including a provision for judicial review of final determinations of the Merit Systems Protection Board [MSPB], where there is an allegation of prohibited personnel practices." *Steele v. United States*, 19 F.3d 531, 532 (10th Cir. 1994). "The CSRA gives the MSPB concurrent jurisdiction with the EEOC when the discrimination is related to or stems from a personnel action appealable to the MSPB, such as removal." *Wilson v. Harvey,* 156 F. App'x 55, 57 n.1 (10th Cir. 2005) (unpublished) (citing 2 Lindemann & Grossman, *Employment Discrimination Law* 1544, 1552-53 (3d ed. 1996)). This is called a "mixed case complaint."

"A mixed case complaint is a complaint of employment discrimination filed with a federal agency based on race, color, religion, sex, national origin, age, disability, or genetic information related to or stemming from an action that can be appealed to the Merit Systems Protection Board." 29 C.F.R. § 1614.302(a)(1). As explained by the U.S. Supreme Court,

> A federal employee bringing a mixed case may proceed in a variety of ways. She may first file a discrimination complaint with the agency itself, much as an employee challenging a personnel practice not appealable to the MSPB could do. See 5 CFR § 1201.154(a); 29 CFR § 1614.302(b). If the agency decides against her, the employee may then either take the matter to the MSPB or bypass further administrative review by suing the agency in district court. See 5 CFR § 1201.154(b); 29 CFR § 1614.302(d)(1)(i). Alternatively, the employee may initiate the process by bringing her case directly to the MSPB, forgoing the agency's own system for evaluating discrimination charges. See 5 CFR § 1201.154(a); 29 CFR § 1614.302(b). If the MSPB upholds the personnel action (whether in the first instance or after the agency has done so), the employee again has a choice: She may request additional administrative process, this time with the EEOC, or else she

> may seek judicial review. See 5 U.S.C. §§ 7702(a)(3), (b); 5 CFR § 1201.161; 29 CFR § 1614.303.

*Kloeckner v. Solis,* 133 S. Ct. 596, 601 (2012); *see also Harms v. I.R.S.,* 321 F.3d 1001, 1005 (10th Cir. 2003) (internal citation omitted) ("Under the CSRA, a federal employee may file a mixed case complaint with the agency's EEO department or a mixed case appeal with the MSPB. A mixed case complaint and mixed case appeal, however, cannot be pursued simultaneously."). Where an employee (or former employee) elects to proceed through the agency's Equal Employment Opportunity office, she must file an appeal with the MSPB or a civil action in federal district court within thirty (30) days of the final decision. *Butler v. West*, 164 F.3d 634, 638 (D.C. Cir. 1999) (citing 29 C.F.R. §§ 1614.302(d)(1)(ii), 1614.302(d)(3), 1614.310(a))[4]; *see also* 5 C.F.R. § 1201.154(b).

For the reasons discussed above, failure to exhaust administrative remedies with respect to this claim does not appear on the face of the Amended Complaint. The Army's motion to dismiss the § 2302 claim on this basis is denied.

With respect to timeliness, the Amended Complaint includes no allegations that Ms. Bond pursued a mixed claim, and the court limits itself to the four corners of the Amended Complaint. Further, the Army devotes only one sentence of its motion to the timeliness requirement. Ms. Bond offered no response.

Based on the limited information and argument before it, the motion raises issues best determined at the summary judgment stage, including whether Ms. Bond's claim was a "mixed

---

[4] Likewise, if an employee or former employee appeals to the MSPB, "within thirty days of receiving a final decision from the MSPB, she can either appeal the discrimination claim to the EEOC, *see* 5 C.F.R. § 1201.157, or appeal the entire claim (or any parts thereof) to the appropriate district court." *Butler,* 164 F.3d at 639.

claim" and, if so, whether it fails due to untimeliness. Accordingly, the Army's motion to dismiss the. § 2302 claim is denied.

## IV. Conclusion

WHEREFORE, the Motion to Dismiss [Doc. 11] of defendant John E. Whitley, Acting Secretary of the U.S. Army, is granted in part and denied in part. The motion is granted as to plaintiff Crystal Bond's first (violation of the Americans with Disabilities Act) and fifth (interference with protected rights pursuant to 29 U.S.C. § 1140) causes of action. The motion is otherwise denied.

DATED this 18th day of May, 2021.

*[Signature]*
GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE